Curia, per
Johnson, J.
If the defendant has assigned a part of his estate to one of his creditors, and if even that assignment was intended to give an undue preference to that creditor in fraud of the others, there is nothing in the Insolvent Debtor’s Act, Pub. Laws, 247, which for that reason would deprive him of the privileges which it confers; but the 7th section of the Prison Bounds Act does interpose a disability for that cause, and the question in point of law in this case is whether this clause is applicable to eases arising under the Insolvent as well as *82 the Prison Bounds Act? In the case of Glenn vs. Lo“ pez, Harper’s Rep. 107, it is said to be applicable to both, but the authority of that opinion has been questioned on the ground that it is a mere obiter dictum; and for the still further reason, that it is not only the privilege but the duty of the court to review its own decisions, I am disposed to consider the question still open for consideration. It is admitted on all sides, that the Prison Bounds Act was intended in part as a modification of the Insolvent Debtor’s Act, and in part as a new system appertaining to the same subject, and according to a well settled rule, both should be read together to arrive at the true interpretation. But how far its provisions were intended to apply to the modification of the insolvent law, to the new system, or to both, jointly, is a question of some difficulty. To entitle a defendant to the benefit of the Insolvent Debtor’s Law, the act imposes on him the necessity of surrendering his whole estate, real and personal, to remain confined in the common jail from the time of his arrest, or within ten days thereafter, and to give three months notice for creditors to come in and establish their claims and to contest his right to be discharged, and the effect is to discharge him wholly as well from the demands of all who shall come in and accept the dividend as the suing creditor, and to protect him from the suits of all others for twelve months. The Prison Bounds’ system dis penses with the actual confinement, and only requires that the defendant confined on civil process should surrender the whole, or so much of his estate as will satisfy the demand of the creditor at whose suit he is confined, and requires only, ten days notice to be given; and the effect is only to discharge him from that particular demand and consequently from his confinement. This analysis clearly shows that the systems established by these several acts are thus far distinct and independent, both as to the- *83 conditions on which the benefits of both are to be obtained and in their effect and operation. But the Prison Bounds Act obviously referring to the rigors of the imprisonment required by the insolvent law, proceeds to enlarge its bounds and limits by extending it to 350 yards in a direct line from the walls of the jail, and in section 2nd permits all persons confined on mesne process to be without the jail on their giving bond and security to the sheriff to remain within the bounds; and the third section provides that all persons confined'on execution in any civil case, should be admitted to the bounds on superad-ding to his bond the further condition that he will within forty days render to the clerk of the court a schedule of his whole estate, or so much thereof as will satisfy the demand of the plaintiff at whose suit, he is confined. That this section, the third, was intended as a modification of the Insolvent Debtors’ Act, as well as a part of the system contemplated by the act to which it belongs, is, I think, most apparent. Without it, there is no provision that a prisoner in execution and who intends to apply for the benefit of the insolvent law shall be entitled to the prison bounds. If confined on mesne process, he might give bail, and thus the boasted humanity of the act would be wholly defeated. But their connection does not depend on this circumstance alone; the 6th section provides expressly that any person confined on mesne process or “ on execution (provided the person on execution has not been in actual confinement above forty days,) be determined to deliver up all his or her estate and effects, and to take the benefit of the act for the more effectual relief of insolvent debtors, he or she shall have the benefit of the said act, although he or she may have given bail to the action or not surrendered him or herself within ten days after the arrest, or not presented a petition within forty days after confinement, or not been actually confín- *84 ed three months, provided he or she comply with the other provisions of the said act,” &c. Thus evidently in the spirit of the act, substituting the more humane prison bounds for the more rigorous confinement in the walls of the jail required by the insolvent law. Then follows the 7th section, out of which the present question arises. It is in these words, to wit, “ any prisoner committed on execution aforesaid, who shall not give in such schedule agreeably to the tenor of his or her bond shall not be any longer entitled to the benefit of the prison rules, but his bond shall be forfeited and assigned to the plaintiff, nor shall any prisoner be discharged without satisfying the action or- execution on which he or she is confined, if since his or her confinement and before, he or she gave security as aforesaid, he or she has been seen without the prison rules without being legally au-thorised so to do,” &c. “ or who shall have within three months before his or her confinement, or at any time since paid or assigned his or her estate, or any part thereof to one creditor in preference to another, or fraudulently sold, conveyed or assigned the same to defraud his creditors.” &c. The word execution as used in the sixth section is applied expressly to the insolvent law only, and as the last antecedent to the words “ execution aforesaid,” in the beginning of the 7th section, must according to grammatical rule be construed in reference to it, and consequently all the provisions of this clause. But I am unwilling to put the subject upon such a subtilty, and will rest it on what, I think, is evidently the spirit and meaning of the act. I have shown already that the Prison Bounds Act intended to substitute the prison bounds for confinement in jail, and that no one confined on execution, whether he intended to apply for the benefit of one or the other of these acts, can be admitted to the bounds without giving the bond required by the 3rd sec-. *85 won of the Prison Bounds Act. What then becomes of the provisions in the 7th section that the bond shall be forfeited and assigned to plaintiff, if the defendant neglect to render his schedule, and that he shall be excluded from the benefit of the act, if, since his confinement, he has been raen without the prison rules, or prefers one credit? or to another? The result would be that the bond would impose no obligation on such as intended to apply for the benefit of the insolvent act. Unless this clause is retained as apart of that system, he might render in his schedule, or go without the prison rules at pleasure and give any preference to one creditor over another however fraudulent and no consequences would follow. The provision in this section that no prisoner shall be discharged without fully satisfying the execution on which he or she shall be confined, if they shall violate its provisions, have been relied on as having a particular and especial relation to the prison bounds system, which contemplates only the payment of the particular debt for which he is confined, and hence it is concluded that so are all its provisions. This is, however, attaching to it more importance than it imports in itself and clearly more than was contemplated by the framers of the law. If a prisoner pays the debt on which he is confined, his discharge follows of course, whether he applied for the benefit of the insolvent or prison bounds act, for the obvious reason that there would be no authority for detaining him in custody, and the same consequences would have followed, if this provision had been omitted. The disabilities interposed by the clause deprive him of the benefit of both of the acts, and his discharge on the payment of the execution on which he is confined is not by their operation, and consequently does not entitle him to the protection which they afford. In other words, he is excluded from the benefit of both gnd is left to purchase his liberty precisely in the same *86 terms as if they had never been passed. Again — is there any reason for interposing greater difficulties in the way of him who applies for the benefit of the prison bounds act than he who claims the benefit of the insolvent act? The consequences of the latter are more inimical to the interest of the creditors. It is more beneficial to the prisoner, because if he pays only five shillings in the pound, he is discharged not only from the demand of the suing creditor but from the demands of all others who think proper to come in and accept a dividend, and he is left to begin the world anew. Whereas in the former a single creditor only is interested and any proceedings under the prison bounds act could only have the effect of discharging him from that particular demand. I come, therefore, to the conclusion that the seventh clause of the prison bounds act is not only according to grammatical construction, but according to the spirit and meaning applicable to the modification of the insolvent act as well as to the former, and must be retained as necessary to the operation and perfection of the system. In the construction of this clause, it was held by the court at the last sitting at Columbia in the case of Creyton and Sloan vs. Dickerson, 3 M‘Cord 438. (a) that the fact of paying a debt due to one creditor within three months before the confinement of the defendant did not of itself exclude him from the benefit of the prison bounds act, but that such payment must have been made with a view to a fraudulent preference of that creditor, or in the terms of the act itself an undue preference; and the correctness of that decision will be apparent to any one who reflects that insolvency may and does frequently overtake persons, particularly in trade, so suddenly as to render it impossible to guard against it. This case was decided in the court below on the ground of law alone and without regard to the character *87 of the transaction, it must therefore be sent back to be tried upon the principles of the rule laid down.
Colcock, J. concurred with Mr. Justice Johnson.

 See also Stover vs. Duren, 2 M'Cord 266.